**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AUDRA L. PUTNAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-08-51-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Audra L. Putnam, seeks judicial review of the Social Security Administration's denial of disability insurance benefits. This matter has been referred for proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

**I.  Procedural Background**

Ms. Putnam initially filed an application for disability insurance benefits on February 17, 2005, alleging an inability to work since being involved in a motor vehicle accident on August 7, 2001. *See* Administrative Record [Doc. #10] (AR) at 64-66. Ms. Putnam's application was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) found that Ms. Putnam was not disabled. AR 11-23. The Appeals Council denied Ms. Putnam's request for review. AR 5-8. This appeal followed.

## II.     The ALJ's Decision

The ALJ applied the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520. He first determined that Ms. Putnam had not engaged in substantial gainful activity from her alleged onset date, August 7, 2001, through her date last insured, June 30, 2004. AR 16. At step two, the ALJ determined that Ms. Putnam suffers from severe impairments: cervical radiculitis, cervical pain and hip pain, as well as cervical disc degeneration. AR 16. At step three, the ALJ found that Ms. Putnam's severe impairments did not meet or equal the criteria of any listed impairment described in the regulations during the relevant period. AR 16. At step four, the ALJ determined Ms. Putnam retains the residual functional capacity (RFC) to perform sedentary work with no more than occasional repetitive movement of the head to the right and left. AR 17.

Based on the testimony of a vocational expert (VE), the ALJ determined that through the date last insured Ms. Putnam had the residual functional capacity to perform her past relevant work as secretary/receptionist. AR 22. The ALJ alternatively found that Ms. Putnam could perform other sedentary, semiskilled jobs existing in sufficient numbers in the regional economy including hospital interviewer, data entry clerk, and record clerk. AR 22.

**III.    Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.    Issues Raised on Appeal**

Ms. Putnam asserts three propositions of error: (1) that the ALJ failed to properly evaluate the medical evidence; (2) that the ALJ erred in failing to obtain the testimony of a medical expert to determine her disability onset date; and (3) that Ms. Putnam does not have the RFC to perform her past relevant work or substantial gainful activity.

**V.     Analysis**

    **A.     The ALJ's Evaluation of the Medical Evidence**

Ms. Putnam contends that the ALJ erred in his evaluation of opinions from two medical providers, Dr. J. Tran, M.D., who is characterized as Ms. Putnam's "treating doctor," and Dr. Angela Shepardson, B.S., D.C., who is characterized as Ms. Putnam's "primary medical provider in 2005."[1]  According to Ms. Putnam, the ALJ should have given the opinions solicited from these two sources the deference reserved for opinions of treating sources.

The treating physician rule generally requires the Commissioner to give more weight to medical opinions of acceptable treating medical sources than those from non-treating sources. 20 C.F.R. § 416.927(d)(2). Using a sequential analysis to evaluate the opinions of treating sources, the ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion

---

[1] As the Commissioner correctly points out, Ms. Putnam apparently did not seek medical care for her impairments from April 2002 until July 2005.

is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id.*

In October 2006, more than two years after Ms. Putnam's date last insured, Dr. Tran stated his opinion that Ms. Putnam is disabled:

> Ms. Audra Putnam has been my patient since May 2006. Patient has long history of chronic neck, back and hip pain since 2001. Patient has been going to Pain Management, chiropractor and having epidural [and] pain medications with no relief. Patient is getting worse since 2001. The last time she worked was July 2001 and was unable to work since then. The best solution to her chronic pain is surgery so she can function her days again. At this time, she is disabled in my professional opinion.

AR 275. When he proffered this opinion, Dr. Tran had seen Ms. Putnam only two times, once in May 2006 and once in June 2006. AR 267-269. Moreover, it is clear that Ms. Putnam began seeing Dr. Tran primarily to obtain his statement that she is disabled. In his treatment notes, Dr. Tran expressed his reluctance to offer such an opinion after her first appointment with him:

> Her father has accompanied her and wants me to write a statement that she is disabled to help her out with insurance but I stated that I do not really know the patient well enough to say that she is disabled at this time.

AR 268. Dr. Tran's notes indicate that he examined Ms. Putnam and referred her to a pain management doctor but did not treat Ms. Putnam for any of her allegedly disabling

conditions. Dr. Tran's doctor-patient relationship with Ms. Putnam does not meet the definition of a "treating source" as set forth in the regulations:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502.

Even if Dr. Tran could be considered a "treating source," his opinion does not contain the kind of information that makes a treating physician's opinion relevant to the disability determination. The regulations define "medical opinions" as follows:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2). Dr. Tran's opinion does not address what, if any, restrictions or limitations Ms. Putnam has because of her impairments.

The ALJ clearly considered Dr. Tran's opinion that Ms. Putnam is disabled.  The ALJ summarized the opinion, noting Ms. Putnam's alleged long history of chronic neck, back and hip pain.  AR 20.  The ALJ's determination that Dr. Tran's opinion should "not [be] given controlling weight" is based on the fact that the opinion is not substantiated by laboratory facts and findings but rather by Ms. Putnam's subjective complaints alone.  In rejecting the opinion, the ALJ also noted the short period of time during which Ms. Putnam had been Dr. Tran's patient.  AR 21.  The ALJ did not err in his analysis of Dr. Tran's opinion.

On November 14, 2005, Dr. Shepardson, a chiropractor who had treated Ms. Putnam from February to April of 2005, wrote an opinion stating that, although Ms. Putnam demonstrated the ability to sit, stand, walk and bend, she should not perform those activities for the extended periods of time that would be required in a workplace for at least 6 months.  Dr. Shepardson also stated that Ms. Putnam should "restrict the movements which are difficult for her, or cause her pain, until her condition is medically corrected or adequate therapy is implemented."  AR 257.  The ALJ found Dr. Shepardson's recommendations to be inconsistent with evidence in the record as a whole including Ms. Putnam's self-reported daily activities.[2]  AR 21.  The ALJ stated that a chiropractor is "not considered a treating medical source."  *Id*.  Because Dr. Shepardson is not an "acceptable medical source," as defined in the regulations, the ALJ would not have been required to give her opinion controlling weight under any circumstances.  *See* SSR 06-03p, 2006 WL 2329939.

---

[2] Ms. Putnam was attending college classes three days per week and working part-time.  AR 21.

Moreover, because the ALJ found that Dr. Shepardson's opinion was not supported by evidence in the record, the ALJ did not err in failing to give greater weight to the opinion.

A review of the record reveals that the ALJ adequately discussed the medical evidence in the record, including the opinion evidence offered by Dr. Tran and Dr. Shepardson. The ALJ's decision need not be reversed based on his evaluation of the medical evidence.

### B.     Evaluation of Ms. Putnam's Onset Date Pursuant to SSR 83-20

Ms. Putnam contends that the ALJ erred in failing to call on the services of a medical expert to help establish the onset date of her alleged disability. She contends that SSR 83-20, 1983 WL 31249, requires the testimony of a medical expert whenever an onset date must be inferred for a disability with non-traumatic origin. This ruling states in relevant part:

> In some cases, it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20.

In this case, Ms. Putnam was not found to be disabled at any time prior to her date last insured. Therefore, the ALJ did not need to "infer" an onset date. Moreover, the above-cited section of SSR 83-20 does not apply to cases where, as in this case, the alleged disability stems from injuries of traumatic origin:

> For disabilities of traumatic origin, onset is the day of the injury if the individual is thereafter expected to die as a result or is expected to be unable to engage in substantial gainful activity . . . for a continuous period of at least 12 months.

*Id.* In this case, Ms. Putnam's allegedly disabling neck symptoms arose from the traumatic injuries she received in the August 2001 automobile accident. Dr. Shepardson's records state that Ms. Putnam's symptoms are directly related to her automobile accident. AR 262. Likewise, Dr. Tran states that Ms. Putnam has been unable to work since the automobile accident. AR 275.

In this case, the ALJ did not err in failing to call on a medical expert for the purpose of establishing the disability onset date. Where no disability has been established, an alleged onset date is irrelevant.

### C.    The RFC Determination and Ms. Putnam's Past Relevant Work

Ms. Putnam argues that the ALJ erred at step four in finding that she could return to her past relevant work. Ms. Putnam bases this proposition on her contention that the ALJ did not make specific findings regarding the demands of Ms. Putnam's past relevant work and improperly relied on the VE's testimony for his conclusion that Ms. Putnam's impairments do not preclude the performance of her past relevant work. Contrary to Ms. Putnam's contention, however, the ALJ's decision was properly based on the VE's description of both the skill level and exertional requirements of Plaintiff's past relevant work. AR 322. Further, the ALJ posed sufficient hypothetical questions to the VE incorporating the exertional limitations of a person with Ms. Putnam's RFC. AR 322-323. It is not error for an ALJ to rely on the testimony of the VE in these areas. *See Doyal v. Barnhart*, 331 F.3d

at 761 ("An 'ALJ may rely on information supplied by the VE at step four.'") (*quoting Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)).[3]

Ms. Putnam further contends that the ALJ erred in failing to determine whether Ms. Putnam could perform the physical activities required of sedentary work on a full-time basis. In support of her argument, Ms. Putnam relies on the opinions of Dr. Tran and Dr. Shepardson. As discussed above, however, the ALJ properly evaluated the opinions of these two medical sources and properly rejected them. *See* discussion *supra* at 5-8. Moreover, the ALJ is not required to specifically state that a claimant can work full-time because Agency regulations presume that an RFC determination is an assessment of the individual's ability to perform full-time work:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 WL 374184.

Ms. Putnam also argues that the ALJ did not provide a narrative discussion describing how the evidence supports his RFC finding. This argument, too, is without merit. The ALJ correctly set out the legal standards and factors applicable to an RFC finding, summarized Ms. Putnam's testimony regarding her pain and limitations, and thoroughly and completely discussed the medical evidence.

---

[3] Even if the ALJ had erred in determining that Ms. Putnam could have performed her past relevant work, reversal is not appropriate in this case. The ALJ's alternative holding at step five of the sequential evaluation is also supported by substantial evidence in the record. *See* AR 22.

10

In sum, the ALJ's determination of Ms. Putnam's RFC and his finding that Ms. Putnam could have performed her past relevant work within the applicable time period is supported by substantial evidence. Ms. Putnam has failed to identify any error in the ALJ's analysis.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by November __3rd__, 2008. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __14th__ day of October, 2008.

*/s/ Valerie K. Couch*
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE